UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STEVEN DOUGLAS WIMSATT             PLAINTIFF

v.             NO. 3:14-CV-712-CRS

THE KROGER CO., *et al*.             DEFENDANTS

### MEMORANDUM OPINION

The above-styled action was removed to this Court under our diversity jurisdiction. The matter is now before the Court on Motion by the Plaintiff, Steven Douglas Wimsatt, to Remand (DN 12) this action to Nelson County Circuit Court. Fully briefed, the matter is now ripe for adjudication. Having considered the parties' respective positions, the Court concludes that we lack diversity jurisdiction to hear this matter. We will grant Plaintiff's Motion to Remand (DN 12) for the reasons set forth below.

### I.

The Plaintiff, Steven Douglass Wimsatt, is forty-eight-year-old (48) male who identifies as homosexual. He began working for Defendant Kroger Co. on August 2, 2010. Since August 1, 2014, however, he has been on permanent suspension and has not returned to work. Wimsatt claims that this suspension was the final act in a scheme contrived by the Defendants – Kroger Co., Kroger Limited Parnership I ("KLP"), Kayla Adams, Naomi Newton, and Jamie Goings – to discriminate against him on the basis of gender and retaliate against him for engaging in protected activity. He consequently filed suit against the Defendants in Nelson Count Circuit

Court alleging violations of the Kentucky Civil Rights Acts ("KCRA"). Ky. Rev. Stat. Ann. §§ 344.040, 344.280.

The Defendants responded by removing the action to this Court under our diversity jurisdiction. In their notice of removal, the Defendants acknowledged that Defendants Kayla Adams, Naomi Newton, and Jamie Goings (the "individual Defendants") are non-diverse defendants, the joinder of which would typically destroy diversity. DN 1. The Notice nevertheless contends that Wimsatt fraudulently joined the individual Defendants and that, resultantly, their joinder should not defeat removal on diversity grounds. *Id.* Now before this Court, Plaintiff has challenged the Defendants' allegations of fraudulent joinder and asked us to remand the matter to Nelson County Circuit Court.

## II.

For a court to have diversity jurisdiction in, no plaintiff may have the same citizenship as any of the defendants. 28 U.S.C. § 1332; *SHR Ltd. Partnership v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989). If the matter has been removed, as this one has, the removing party bears the burden of proving the existence of federal jurisdiction. *See Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006); *Long v. Bando Mfg. of Am. Inc.*, 201 F.3d 754, 757 (6th Cir.2000). Removal statutes, moreover, are construed narrowly, and doubts about the propriety of removal are to be resolved in favor of remand. *See Long*, 201 F.3d at 757. If the Court ultimately finds that diversity is destroyed by the addition of a non-diverse party, however, then we no longer have jurisdiction and must remand the case. 28 U.S.C. § 1447(c).

To that end, Plaintiff Wimsatt argues that he and the individual Defendants, Adams, Newton, and Goings, are all, like Wimsatt, citizens of Kentucky, and thus destroy the complete diversity that is required under 28 U.S.C. § 1332(a)(1). The Defendants do not dispute this

2

contention that Adams, Newton, and Goings are citizens of Kentucky. Instead, the Defendants argue that Wimsatt fraudulently joined them for the purpose of destroying complete diversity. If the Court agrees that their joinder was fraudulent, it will neither defeat the Defendants' removal nor the Court's diversity jurisdiction. *See Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994).

To prove fraudulent joinder, the Defendants must present sufficient evidence showing that Wimsatt could not have established a cause of action against Adams, Newton, or Goings under Kentucky law in state court. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *see Alexander*, 13 F.3d at 949. But if the Court finds that there is a "colorable basis" for predicting that Wimsatt *may recover* against these non-diverse defendants, on the other hand, the joinder will not prevent remand. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). In effect, the issue here is "whether there is arguably a reasonable basis for predicting that *state law* might impose liability on [Adams, Newton, or Goings] given the Plaintiff's allegations." *Taylor v. Toys "R" US-Delaware, Inc.*, No. CIV.A 509CV280KKC, 2010 WL 231683, at *4 (E.D. Ky. Jan. 13, 2010). This is a forgiving standard indeed. *See e.g.*, *Philpot v. Best Buy Stores, L.P.*, No. CIV. A. 308-CV-56-S, 2008 WL 2811972, at *2 (W.D. Ky. July 21, 2008); *Green v. G2 Secure Staff, LLC*, No. CIV.A. 07-409-C, 2008 WL 782612, at *2 (W.D. Ky. Mar. 21, 2008). What is more, we must resolve "all disputed questions of facts and ambiguities in the . . . controlling state law in favor of the non removing party" in applying it. *Coyne.* 183 F.3d. at 493.

The Complaint alleges that Defendants Adams, Newton, and Goings violated Section 344.280 of the Kentucky Civil Rights Act ("KCRA"). DN 1-2, p. 11. This Section of the KCRA provides that:

> It shall be an unlawful practice for *a person*, <u>or</u> for *two (2) or more persons to conspire*:
>
> (1) *To retaliate* . . . in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.

Ky. Rev. Stat. Ann. § 344.280(1) (emphasis added). In practice, and critical here, the only meaningful distinction between this provision and Title VII's retaliation provision is that "[t]he Kentucky retaliation statute . . . permits the imposition of liability of individuals." *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 630 (6th Cir. 2013) (quoting *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000)). Hence, there is no dispute that Wimsatt can pursue retaliation claims against individuals; rather, the question is whether there is arguably a reasonable basis for predicting that Nelson County Circuit Court might impose liability on Adams, Newton, or Goings under KRS. § 344.280(1) based on Wimsatt's allegations. *See Taylor*, 2010 WL 231683, at *4. We think there is.

The Complaint alleges that Adams, Newton, and Goings conspired with Kroger Co. and KLP to retaliate against Wimsatt. DN 1-2. Under Kentucky law, two or more persons conspire when they unlawfully combine or agree to "do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Montgomery v. Milam*, 910 S.W.2d 237 (Ky. 1995). Unlawful retaliation, moreover, requires a showing that: 1). the Plaintiff engaged in protected activity; 2). the Defendant was aware of this protected activity; 3). the Defendant took some adverse employment action against him or subjected him to "severe and pervasive retaliatory harassment;" and, 4). a causal connection exists between the protected activity and action or harassment. *Bowers v. State Farm Ins. Co.*, No. 3:09-CR-290, 2011 WL 304578, at *15 (W.D.

4

Ky. Jan. 25, 2011) (citing *Morris*, 201 F.3d at 792)).[1]  For purposes of Wimsatt's claim, however, he need only show that 1). he *engaged in protected activity* and 2). that some combination of Adams, Newton, and Goings *conspired to retaliate* against him *because of* his protected activity.  Yet, he need not show that the conspiracy came to fruition. *Haddle v. Garrison*, 525 U.S. 121, 125, 119 S. Ct. 489, 492, 142 L. Ed. 2d 502 (1998).  Viewed through that lens, we will conclude that his allegations overcome the "colorable basis" standard.

First, we find that the Complaint presents a "colorable basis" for determining that Wimsatt may have engaged in protected activity.  The Supreme Court has held that anti-retaliation protection extends to employees who speak out about sexual discrimination, not on their own initiative, but in answering questions during their employers' investigation of a coworker's complaints. *McClellan v. Serv. corp. Int'l*, No. 2008-CA-000398-MR, 2010 WL 476005, at *5 (Ky. Ct. App. Feb. 12, 2010) (citing *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 555 U.S. 271, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009)).  Here, Wimsatt has alleged such a situation: that he was repeatedly questioned by management − in "meetings and grievances" − in response to Adams, Newton, and Goings gender-based, false, and exaggerated complaints about him, and that he answered each time by reporting his accusers' sex-based discrimination against him. DN 1-2.

More specifically, Wimsatt alleges that each of the individual Defendants' following actions prompted management to engage him in "meetings and grievances:" 1). Adams, Newton, and Goings falsely complained to management about his alleged failure to fill out temperature logs; 2). Adams and Newton "contrived a story" about the Plaintiff threatening their Union Steward; 3). Adams, Newton, and Goings falsely complained to management about Wimsatt's

---

[1] Unlawful retaliation under the KCRA is consistent with the interpretation of unlawful retaliation under federal law. Bowers v. State Farm Ins. Co., No. 3:09-CR-290, 2011 WL 304578, at *15 (W.D. Ky. Jan. 25, 2011).

allegedly coming to work drunk and insulting co-workers; and, 4) Goings lied to management about Wimsatt trying to choke her. DN 1-1. Wimsatt insists that Adams, Newton, and Goings took each of these actions "in furtherance of their scheme to discriminate on the basis of sex and retaliate in an effort to have [him] terminated." DN 1-2, p. 11. Critical here, the Complaint also alleges that Wimsatt engaged in protected activity during the "meetings and grievances" that followed by "defend[ing] himself with reports" against Adams, Newton, and Goings. *See id*. If proven, we are convinced that these facts provide a "colorable basis" on which a state court might find that Wimsatt engaged in protected activity by reporting the individual Defendants' alleged discrimination.

But to be clear, Wimsatt's Complaint does contain one glaring, though not fatal, flaw. It alleges that Adams, Newton, and Goings false complaints about temperature logs constituted retaliatory conduct or conduct evidencing their conspiracy to retaliate; yet, Wimsatt does not claim to have engaged in any protected activity prior thereto. *See* DN 1-2, p. 5-6. It is well-settled that retaliatory conduct cannot occur prior to protected activity, so these allegedly false complaints cannot constitute retaliation. *See Morris*, 201 F.3d at 792. However, the remaining retaliatory acts contained in the Complaint are alleged to have occurred *after* his first instance of alleged protected activity and are, thus, chronologically sound.

Setting aside protected activity, we also find that the Complaint presents a "colorable basis" for concluding that Adams, Newton, and Goings *conspired* to retaliate against Wimsatt because of his protected activity. Wimsatt's Complaint generally alleges that "the Defendants Adams, Newton, Goings, Kroger Co., and KLP conspired to retaliate against [Wimsatt] for exercising his rights under KRS 344." DN 1-2, p. 11. Then it more specifically alleges the following: 1). that Adams, Newton, and Goings "contriv[ed] allegations about Plaintiff for things

6

like 'not shutting the refrigerator door'" and excessively buzzed him over the intercom for purposes of harassment and annoyance; 2). that Adams and Newton "contrived a story" in which Plaintiff threatened to kill their Union Steward; 3). that Newton and Goings falsified complaints together about Plaintiff coming to work drunk; 4). that Adams, Newton, and Goings "began telling new hires . . . they want[ed] to get Plaintiff fired;" and, 5). that a co-worker told him "[Adams] and [Newton] . . . want to get you in trouble." DN 1-2, p. 6-9. Taken as true, these allegations indicate that Adams, Newton, and Goings conspired – unlawfully combined or agreed to do by concert of action – to harass Wimsatt or have him subjected to an adverse employment action "for engaging in protected activity." *Id*. at 11. We accordingly reject the Defendants' arguments to the extent that they question the adequacy of the foregoing allegations.

  Nor is there any merit to the Defendants' argument that Wimsatt has actually pleaded a "sexual orientation retaliation claim" because his Complaint claims discrimination on the basis of his "sex as a homosexual male." DN 14, p. 2. We acknowledge that discrimination on the basis of sexual orientation is, simply put, a claim that is not cognizable under the KCRA. *See Pedreiera v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009) (explaining that the KCRA does not recognize sexual orientation as a protected class). And indeed, Wimsatt references his sexual orientation throughout the Complaint. DN 1-2, p. 10. Yet, he explicitly accuses the defendants of "sex discrimination" and "discrimination on the basis of sex," not on any other basis. *Id*. "Sex," used in this sense, is alternative way of saying "gender." Even federal courts use the terms "sex" and "gender" interchangeably. *See, e.g.*, *Preston v. City of Danville*, No. 99-461, 2000 WL 33117411, at *4 (E.D. Ky. Nov. 22, 2000). Hence, we are not surprised that Wimsatt's Complaint explains that KRS 344 prohibits discrimination on the basis of sex, which it does, and *then* alleges that he was retaliated and discriminated against "because

7

of his *sex* as a homosexual *male*." Never, however, does he allege that he was discriminated against "because of his sexual orientation as a homosexual male." Thus, regardless of how he tried to dress them up, the operative words in Plaintiff's allegations are "because of his sex as a []male." DN 1-2, p 10. And even if we were to entertain the argument that the Complaint is ambiguous as to whether it alleges discrimination on the basis of gender or sexual orientation, the law directs us to resolve any such ambiguity in Wimsatt's favor. *Coyne*. 183 F.3d. at 493

This is then bolstered by the fact that Wimsatt's conspiracy-to-retaliate claim is, at most, tangentially related to his discrimination claim. In this instance, Wimsatt's retaliation claim is simply based on 1. his alleged participation in protected activity, and 2. the Defendants' alleged conspiracy to retaliate in response thereto. *Id*. In fact, whether Wimsatt's underlying discrimination claim is ultimately successful or not will have no bearing on the success of his retaliation claim. *Stanley v. Insights Training Grp., LLC*, No. 3:09-CV-00231, 2013 WL 76123, at *6 (W.D. Ky. Jan. 4, 2013) *reconsideration denied*, No. 3:09-CV-00231, 2013 WL 1636371 (W.D. Ky. Apr. 16, 2013) (explaining that a plaintiff who has a reasonable and good faith belief that he or she was complaining of unlawful discrimination has engaged in protected activity); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir.2000). By extension, whether Wimsatt has sufficiently pleaded an unlawful discrimination claim is not necessarily relevant to his conspiracy-to-retaliate claim – especially at this prefatory stage in the litigation. *See id*; s*ee also Coyne*, 183 F.3d at 493.

The Court nonetheless makes no determination as to whether all the facts will ultimately support a KRS 344.280 claim against Adams, Newton, or Goings based on the current allegations, as these facts "are best determined after some discovery." *Adams v. United Parcel Serv.*, No. CIV A. 1:06CV-46R, 2006 WL 1687699, at *3 (W.D. Ky. June 19, 2006); *see*

*Breeden v. HCA Physician Servs., Inc.*, 834 F. Supp. 2d 616, 618-19 (W.D. Ky. 2011). We do, however, conclude that there is a "colorable basis" for predicting that "state law might impose liability upon" Adams, Newton, and Goings for conspiring to retaliate against Wimsatt. *See Taylor*, 2010 WL 231683, at *4. The Defendants have therefore not met their burden of defeating diversity jurisdiction. And because the Court finds that Defendants Adams, Newton, and Goings were not fraudulently joined, we must remand the matter to state court.

### III.

For the reasons set forth herein, we will grant Plainttif's Motion to Remand. (DN 12). A separate order and judgment will be entered remanding this case in accordance with this Memorandum Opinion.

June 8, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**